Good morning. It's an honor to appear before this court again. I would like to divide my time five minutes and five minutes, so I'll try to get through this pretty quickly. In this case, there really is no dispute as to the material facts of the case. Schedule 1.87 of the plan of reorganization specifically provided that all valid memberships in good standing would be assumed, and that we feel is really the controlling language in this case. In fact, Schedule 1.87 itself says if there's any conflict with this language anywhere else in the plan, the plan is to be deemed amended to conform to the language in Schedule 1.87. That's the last sentence in the preamble to that schedule. If you look at it, it says our records, our membership records are in disarray, and they're poorly organized and so forth. There may be some valid memberships in good standing that are not on this list, and if so, what you should do is send that to a certain person, and Mr. Sumpter's name was not on there, and we did submit it to him in a timely fashion. This is really important. It has never been contested in this case that Mr. Sumpter had a valid resident membership in good standing, and it even went so far as on June 1st of 2009 at the second confirmation hearing that counsel for the club stipulated to that, and Judge Kersher said it's so ordered. That's right at the very beginning part of the case on June 1st. So what we have is all the criteria were satisfied by Mr. Sumpter. He had a valid membership. He was a member in good standing. He had a special kind of resident membership to me. He did. It was a unique one, and the evidence doesn't show it. It was a non-dues paying membership. But it's important that there are no flavors of resident membership in this case. There are national memberships. There's company memberships. There's honorary memberships. There's founder's circle memberships. There's resident memberships, period. There's no certain kinds of resident memberships. But there were two kinds of resident memberships. One was a dues paying resident, and Mr. Sumpter's was a non-dues paying membership. Yes. And the plan, though, only identifies resident memberships, and it contained no, and this is really important under bankruptcy law, it contains no provision for other kinds of resident memberships. If there had been a kind of resident membership that was to be rejected, then under the bankruptcy code, they would have had to create a class for rejected resident memberships, but they didn't. There's a class for rejected company memberships. There's a class for rejected honorary memberships, a class for rejected founder's circle memberships, and all of that. And so the plan itself is set up that there's one kind of resident membership, and that's this one. The disclosure statement itself supports that language, and I realize the plan is the government document, and we're perfectly happy to rely on the specific language of 1.87, but the disclosure statement supports that position. So, again, we just go back to the point that the specific language of schedule 1.87 said it's going to be all resident memberships, not non-special memberships or certain kinds of memberships, all resident memberships will be assumed. And he had a resident membership, and there was no provision in the plan for identification of other kinds. And my time is up, so thank you. Thank you. Good morning. May I please the Court? Michael Estovsky, Dwayne Morris, LLP, here for the Apoly New CHYNC Acquisition LLC. I have an argument prepared, but if any of you have a question, I'd be pleased to answer that before I begin. I just wondered if you would address whether there's standing to pursue the appeal in light of the failure of the appellant to attend the confirmation hearing. The reason for that is he was objecting to the classification of his claim and saying that he was not a company member, or rather he should be a residential member. He had abundant notice prior to the confirmation hearing that his contract was not being assumed. Generally, plans of organization will have a default one way or the other. Unless otherwise assumed, you're rejected, or unless otherwise rejected, you're assumed. The safe thing is to fall towards rejection so you're not stuck with a burdensome contract that you don't know about. Here, the default was rejection. Mr. Sumter's contract never appeared on an assumption schedule. Therefore, any reading of the plan would demonstrate to him that his contract was going to be objected. True, there were provisions in some of the bankruptcy court orders that permitted the debtors to amend those schedules, but they were all to be done in a manner so that they would be filed well ahead of the confirmation hearing. There was one deadline, I believe, which was 15 days before the hearing, another 10 days before the hearing, and on neither of those dates were the schedules amended to include Mr. Sumter's schedule. And at the hearing on June 1, where, by the way, he got a full trial on the merits, he didn't show up in the earlier hearing, but he certainly can't say he never got his day in court, he acknowledged that he knew his contract was on none of those schedules. I think one thing that we shouldn't lose sight of is that under the code, a debtor can reject an executory contract if the debtor demonstrates that it's exercising its reasonable business judgment. That's the overarching bankruptcy procedure. Correct. And there is no dispute in this case that the rejection of this contract was a reasonable exercise of business judgment. Now, the debtor can reject the contract in a plan or by motion. Here, it was done in the context of a plan. I can tell all of you who have read the paper, so you know why we deem this contract to be burdensome and decided to reject it, because it was non-dues paying. And Mr. Sumter, a former employee of the club, was familiar with the types of memberships that were issued to various persons. All of the non-dues paying types of memberships were being rejected. The dues paying memberships were being assumed. Among the dues paying memberships were the so-called resident memberships. But his resident membership did not require him to pay dues. And further, he had an option to convert his membership to a so-called national membership. I think it was for $50,000 at a time when those were being sold for $300,000. So I think it's important to point out, it never was stipulated that he had a valid resident membership in good standing. The actual excerpt from the records, it states, is the Debtors Council stating, the debtors will acknowledge that Mr. Sumter does not have a company membership. That's how he was originally classified. And he has what we believe is a non-standard residential membership. And that's the pertinent membership for purposes of this hearing. And the court said very well, so it's stipulated. And it is this non-standard aspect of it that kind of takes him out of the mix. This is Big Sky. Is that where this is? Yes, yes. And is this, just out of curiosity, what's the status of the bankruptcy? Is it the Chapter 11? Well, a plan was confirmed. And the confirmation was appealed to the district court, which reversed it, remanded it. The bankruptcy court reaffirmed his earlier findings. And now it's been appealed once again before the district court, before Judge Haddon. However, since the plan went effective, the resort has been operating. Okay. So, again, there's no dispute that the rejection of this was a reasonable exercise of business judgment. And Mr. Sumter knew that his contract was not being assumed. It couldn't be cleared. Again, the default was rejection unless you were assumed. And the plan stated that unless your contract was previously assumed, unless there was an existing motion to assume your contract, or unless you appeared on one of these so-called assumption schedules, your contract was going to be rejected. And his membership never appeared on any of the schedules. And, in fact, his membership, characterized as a company membership, was on one of the rejection schedules. And so, with that knowledge, again, he didn't show up at the hearing, at the original confirmation hearing. He then filed his Rule 60 motions. And, again, there was a full hearing all over again when more evidence was presented as to why this rejection was a reasonable exercise of business judgment. Mr. Sumter's counsel had the opportunity to cross-examine. And the Court denied the Rule 60 motion, which I think this Court has to review under an abusive discretion standard. But even if this testimony presented at the confirmation hearing, I don't think it can be denied that the debtors would have been committed to reject this contract. Unless you have more questions, that's all I have to present. I think it's a fairly straightforward issue. No questions. Thank you very much. Mr. Lustowski. And Mr. Mackey. Thank you, Your Honor. Judge Schroeder, I feel that I need to address the question you raised, because it apparently is foremost in your mind. It's on my mind. It's in the case. It's on your mind. With regard to the standing to appeal, they mentioned that Mr. Sumter had abundant notice that he was not being assumed. But that is wrong. The only documents that were on file in the case indicated that his contract was going to be assumed, because it was, in fact, a resident contract. And they said, if you're not on Schedule 1.87, send the contract in and you'll be added when we realize that you have a valid membership in good standing. He did that. He did everything he was supposed to do. Then, for the very first time, the issue of rejecting a resident membership came up on May 18th. It had never been raised in a pleading. It had never been raised in a motion. It had never been stated anywhere in the disclosure statement or the plan. So he had no notice that somehow his contract was going to be rejected, because there's no authority in the contract. Or, excuse me, there's no provision in the plan of reorganization for that. And that, of course, as you know, is the governing document in these cases. But, moreover, and I think this is important. I don't want it to get lost. Right after May 18th, on May 21st, when we saw how Judge Kirscher had ruled, we immediately filed a motion to add his name to Schedule 1.87. Now, such a motion had not been filed before. And Mr. Lestowski's comment about when the schedule could be amended refers to superseded documents. The deadline for amending the Schedule 1.87 was not 10 or 15 days before the confirmation hearing. It was the date of the confirmation order. And the word confirmation order is capitalized and defined in the plan as being the day that the written confirmation order is issued. And the written confirmation order was issued on June 2nd. So he had filed his motion in advance, in time, for the court to rule. And, really, the court didn't really even seem to give that motion much weight. I think he just said something like, well, the motion to amend Schedule 1.87 goes the same way that the rest of it does. And so, therefore, it's denied. I really gave no analysis to it or paid really much attention to it. He timely filed a motion. We had a hearing on it. And they stipulated that he had a valid resident membership in good standing. And so under the plan, under the bankruptcy code, there's no reasonable or lawful basis for his contract to have been rejected. Let's see. Well, I believe that's it. Is there a financial reason for it? Not really. As I mentioned in the briefs on the next case I'll be here for, there really isn't a financial reason for it because, well, I take that back. That has to do with the claim. Let me withdraw that comment. At the hearing on June 1st, it was established that Mr. Sumter's dues, free dues, over the life of the projections and the lack thereof, constituted .004% of the total income of the business. That's not .004 times 100. That's 1% times .0044, whatever that is, thousandths or whatever of a percentage point is what is the financial impact that his dues has on this thing. So that is, we feel that's a specious argument. But moreover, we feel it's inappropriate because you only get into the business judgment rule if there is a, if they're looking for justification of why they wanted to reject this contract and the plan doesn't provide for that. You can only assume residential contracts. Thank you. I'm out of time. Thank you for your argument. Can we thank both counsel for their arguments? And the case 10-36066 on Yellowstone Mountain Club.
judges: Schroeder, Alarcon, Gould